

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

DAVID E. MACK
    *Plaintiff,*

vs

MIDLAND CREDIT
MANAGEMENT, INC.
    *Defendant.*

§
§
§
§
§
§
§
§
§
§
§
§

Case No. 4:14-cv-481-RAS-DDB

## PLAINTIFF DAVID E. MACK'S OPPOSITION AND MEMORANDUM IN SUPPORT TO DEFENDANT MIDLAND CREDIT MANAGEMENT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**COMES NOW** Plaintiff, David E. Mack ("Mack"), with his Opposition and

Memorandum in Support to Defendant Midland Credit Management, Inc.'s ("MCM") Motion

for Judgment on the Pleadings and states as follows:

## I. INTRODUCTION

Defendant brings its motion before this Court for Judgment on the Pleadings arguing the

Plaintiff's Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(c), because it is

barred by the doctrine of *res judicata* and the rule against claim-splitting. Unfortunately the

Defendant does not come before this Court in candor as it should in bringing its motion. Defendant

references an Offer of Judgment made to and accepted by the Plaintiff in another case with the same

causes of action[1] but fails to include many details to give this Court the proper context of that first

case where judgment was entered on July 3, 2014, the actions by the Defendant prior to that

judgment, and the instant action before this Court. Defendant drones on *ad nauseam* about facts not

---

[1] *Mack v. Midland Credit Management, Inc.*, 4:14-cv-00200 (E.D. Tex. 2014)

in evidence and about *res judicata* and claim-splitting when the facts surrounding this and the prior case are far different than portrayed by the Defendant.

## II. STATEMENT OF THE ISSUES

Defendant argues that it is entitled to Judgment on the Pleadings pursuant to Local Rule 7(a)(1), because a court of competent jurisdiction entered a final judgment on the merits addressing the same causes of action alleged in the present lawsuit and because Plaintiff's claims are improperly split.

## III. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

There is much more to this case than what has been presented in MCM's motion and request for relief from the court. Mr. Mack will herein provide this court with, as Paul Harvey would say, "The rest of the story."

This case and the other cases referenced herein arise from actions taken by MCM that commenced on November 29, 2013. At 9:35 AM Mr. Mack received the first of what would become an ***incessant barrage*** of phone calls totaling 110 individual calls made at all times of the day and evening to his cell phone number 682-560-1675 from 877-237-0512 over the next 90 days. On numerous occasions over that 90 day period Mr. Mack received as many as four calls a day from that same number where there was **never a live person on the phone** when he answered and a **message was never left when he didn't answer.**

Mr. Mack had no idea who was calling his cell phone up to four times a day until he conducted research and identified that it was MCM, a well-known debt collector, who was calling his cell phone from 877-237-0512 and never leaving a message or with a live person on the line. When Mr. Mack answered his cell phone ***on numerous occasions*** he stated "*quit calling*

*this number* " or "*quit calling this phone*" but each time he did so the call was disconnected with no live person ever coming on the line.

**Mr. Mack knew that there was NO legitimate debt that MCM *could or would* be calling him to collect**. Mr. Mack did not answer the first few calls to his cell phone because he was not expecting any calls other than from persons he had given that cell phone number to for a specific purpose. He knew none of those individuals would be calling him from a toll free number yet his activities including other phone calls, meals, and even bathroom activities were interrupted on numerous occasions and at extremely inconvenient times because of the incessant ringing of his cell phone caused by MCM on an almost daily basis.

Before Mr. Mack took any legal action against MCM he reached out to it with a letter of intent to Sue (*See* Exhibit A) informing it that he had claims against it as a result of the phone calls and asked MCM to contact him to resolve the matter and mitigate any damages. Mack did not receive any response to his letter at any time although USPS records show it was received by the Defendant on March 3, 2014. (*See* Exhibit B) Mack made a good faith effort to settle the matter without litigation, to no avail.

Mr. Mack did extensive research on MCM and its litigation history and strategy and discovered its obvious pattern and practice of moving any lawsuit with TCPA claims brought against it into MDL Case 2286.[2]

Mack chose to bring an action against MCM in small claims court in the Justice Court of Collin County, Texas for violations relating to *only the very first call* that he received on November 29, 2013[3] because as Plaintiff he had the choice of venue to bring forth his complaint.

---

[2] MDL Case 2286 was commenced in October 2011 when four class action TCPA cases against MCM were combined and accepted by the Multidistrict Litigation Panel as Case 2286 in the Southern District of California at San Diego. As of September 21, 2014 the number of cases had increased to 123.

[3] 32-SC-14-00103 Justice Court 3-2, Collin County, TX

Mack also did so because of his knowledge of MCM's pattern and practice of taking all TCPA cases filed against it to the MDL which, if done with his case, would be **highly prejudicial to Mack** with his case ripped from his control as a *pro se* litigant and put under the control of <u>unknown appointed counsel with unknown qualifications or agendas in a far flung jurisdiction</u>. The MDL is shown to be moving at a snail's pace toward adjudication because of the continual addition of new cases to it with the number of cases being added accelerating very rapidly in just the last several months.[4]

Mack anticipated that his case would most assuredly be moved to the MDL in a distant jurisdiction if he filed his action in federal court for all 110 calls based on his research of MCM's pattern and practice of dealing with TCPA litigation. Mack's reasoning for bringing an action for one call in Collin County small claims court was to get the attention of MCM to show that he was, in fact, going to press forward with litigation against it as stated in his Notice of Intent to Sue which was ignored. Mack was again attempting to mitigate costs by using small claims court as a less expensive venue to seek redress of his claims and hopefully reach a settlement of all issues with MCM. Any reasonably intelligent person, such as Mack, would likely not file his case in federal court knowing he would be jumping into the boiling tar pot of an MDL if he had an alternative.

After MCM was served with the lawsuit Mack was contacted by Reid Manley of BURR & FORMAN, LLP via email. Mack apprised Mr. Manley of the fact there were a total of 110 phone calls made in violation of the TCPA instead of just the single call stated in the lawsuit and he wished to discuss settlement of ALL violations to see if a settlement for the total number of calls could be reached. <u>Mack also provided a spreadsheet of all call details so Mr. Manley could review it with MCM for settlement purposes.</u> (*See* Exhibit C) Mr. Manley made an offer of

---

[4] MDL Case: 2286: Midland Credit Management, Inc. Telephone Consumer Protection Act. (TCPA) Litigation.

settlement on behalf of MCM in the amount of $1,000 to settle all claims and stated that MCM would waive the balance on the debt (there was no debt). (*See* Exhibit D)

Mack let Mr. Manley know that the offer of $1,000 was not acceptable and that **there was no debt to waive.** Mack received no reply to his email regarding further settlement discussions but soon after received service of copies of MCM's motion removing the Justice Court suit to Federal Court in the Eastern District of Texas Sherman Division[5]. Mack filed a First Amended Complaint on April 8, 2014[6] and soon thereafter was served with a NOTICE OF TAG-ALONG ACTION dated April 7, 2014 where MCM requested removal of the district court case to MDL Case 2286 in the Southern District of California. (*See* Exhibit E pg. 2 ¶5)

MCM did precisely what Mack had anticipated it would do with his TCPA action by attempting to effectively rip it from his control and move it to a distant jurisdiction. MCM knew that Mack as a *pro se* litigant would NOT have the right of overseeing the prosecution of his own case (which would be overseen by attorneys of unknown competence and with unknown agendas) in the far flung MDL jurisdiction.

Mack does not have access to the CM/ECF system and knew he would be dealing with substantially reduced times to respond to any motions in the MDL under its rules. It would dramatically increase his mailing and litigation costs to timely file any documents in the far flung MDL jurisdiction in California not to mention bringing numerous other prejudicial disadvantages to bear as a result of his case being dealt with in a distant foreign jurisdiction.

MDL Case 2286 was formed to consolidate four *class action suits* involving debtors against MCM to promote the just and efficient conduct of the litigation. Mack's case was NOT a class action but an action by a **single non-debtor** seeking relief.

---

[5] *Mack v. Midland Credit Management, Inc.*, 4:14-cv-200 Doc. 1
[6] *Mack v. Midland Credit Management Inc.*, 4:14-cv-00200 Doc. 5

On or about April 12, 2014 Mack received a printed **Court Notice** dated April 8, 2014 from the clerk of the MDL Panel stating **"The clerk of the Panel has determined the listed action(s) is not appropriate for inclusion in this MDL."** (*See* Exhibit F) The MDL panel refused to accept Mack's case allowing it to remain in the jurisdiction of the Eastern District of Texas. Mack contacted the Clerk of the Panel to inquire as to the reason why his lawsuit was not appropriate for the MDL and was told after several specific questions and the clerk twice conferring with others, "they just don't want it." Mack had no reason to believe that should he amend his complaint to include all the calls made to him that MCM would not immediately again attempt to take the case back to the MDL to prejudice Mack and duck being held accountable at any reasonably near future time.

After seeing its attempt to put Mack's complaint in the black hole better known as the MDL failed, MCM employed yet another tactic rather than negotiate with Mack in good faith to resolve his claims. On April 22, 2014 MCM served an Offer of Judgment pursuant to Rule 68 of F.R.C.P. on Mack[7] (*See* Exhibit G) as well as a Motion to Dismiss for Lack of Jurisdiction.[8] Mack accepted the Offer of Judgment on May 2, 2014[9] (*See* Exhibit H) and Judgment was entered on July 3, 2014.[10] In its offer of judgment MCM admitted to all violations and liability for ALL causes of action brought in the lawsuit with **no disclaimer of violations or liability** in its offer of judgment. Mack specifically stated in his acceptance of the offer of judgment that he accepted the offer relating to all claims in **that case only.**[11]

MCM, in its Motion for Judgment on the Pleadings inaccurately states "…Plaintiff suffered a substantive defeat in a court of competent jurisdiction – the U.S. District Court for the

---

[7] *Mack v. Midland Credit Management, Inc.*, 4:14-cv-00200 Doc. 6-1.
[8] *Mack v. Midland Credit Management, Inc.*, 4:14-cv-00200 Doc. 6.
[9] Mack v. Midland Credit Management, Inc. 4:14-cv-00200 Doc. 9.
[10] Mack v. Midland Credit Management, Inc. 4:14-cv-00200 Doc. 11.
[11] *See* Exhibit H attached

Eastern District of Texas...." when, in fact, it was the **Defendant, MCM**, that suffered the substantive defeat in the U.S. District Court for the Eastern District of Texas.

On April 7, 2014 Mack filed a second small claims lawsuit in Justice Court in Collin County, Texas against MCM for another call to Mack's cell phone that was removed to District Court.[12]   On May 1, 2014 Mack filed a third small claims lawsuit in Justice Court of Collin County, Texas against MCM for another call to Mack's cell phone at 8:44 PM on December 4, 2014. On June 12, 2014 Mack filed another small claims lawsuit in Justice Court in Collin County, Texas against MCM for another call to Mack's cell phone at 8:59 AM on December 9, 2014 which was a **separate, distinct, and unique occurrence** unrelated to the previous or **any** other call he received from MCM.  The violations alleged in the complaint were identical **as to statute** as in the first lawsuit.  The **date and time of the alleged violations was completely different** from the calls in the first, second, and third cases and the alleged violations were therefore **separate, distinct, and unique occurrences** wholly different from the violations alleged in the first lawsuit upon which judgment was rendered.  MCM received service of process of the instant action through its registered agent on July 7, 2014.

On July 21, 2014 MCM removed the action from Justice Court in Collin County, Texas to the Eastern District of Texas.[13]  Mack filed an Amended Complaint on July 22, 2014. (Doc. 5)

On August 26, 2014 MCM filed its Motion for Judgment on the Pleadings arguing the instant case should be dismissed because it is barred by the doctrine of *res judicata* and the rule against claim-splitting and requesting an injunction from the court barring further litigation against MCM. (Doc. 11)

---

[12] Mack v. Midland Credit Management, Inc. 4:14-cv-00265.
[13] Mack v. Midland Credit Management, Inc. 4:14-cv-00481 Doc. 1.

MCM knew at the time it filed its motion that it had been calling a person who was a non-debtor and there was no transaction or account that did or could have resulted from a transaction involving Mr. Mack because he had provided the details of all calls he had received to MCM after service of the first suit and MCM knew the calls had been placed to a non-debtor without consent.

## IV. **STANDARD OF REVIEW**

The standard of review for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion. See *Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). Thus, determining the propriety of granting a motion for judgment on the pleadings requires courts to accept all the factual allegation in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. See *Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 550 (5th Cir. 2007); *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The U.S. Supreme Court explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). While factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" a formulaic recitation of the elements of a cause will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Supreme Court has recently stated that Rule 8 demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937 (2009) citing *Twombly*, 550 U.S. at 555. Facts that are merely consistent with the plaintiff's legal theory will not suffice when,

without some further factual enhancement stop short of the line between possibility and plausibility of entitlement to relief." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 n.9 (5th Cir. 2009) citing *Twombly*, 550 U.S. at 557. The same standard applies when considering a motion for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c). *See Doe v. MySpace, Inc.* 528 F.3d 413, 418 (5th Cir. 2008).

## V. <u>ARGUMENT</u>

This case and several others with David Mack as Plaintiff and Midland Credit Management, Inc. as Defendant[14] are part of what is a true modern day David vs Goliath story. A more detailed explanation of the entire series of events leading to this and the other lawsuits is necessary for the court to fully comprehend the context of what actions have occurred that led to the Defendant's Motion for Judgment on the Pleadings opposed and argued herein.

Midland Credit Management, Inc. (MCM, Goliath) is the operational arm of Encore Capital Group, Inc. one of the largest debt buying and collection companies in existence today. MCM is a *fictional behemoth* that functions not as a legitimate business entity with intent to operate within the law, but instead operates with demonstrated contempt for the law and an unquenchable thirst for profits at the cost of the privacy, civil rights and serenity of a multitude of Americans including Mr. Mack.

MCM is in a business that obviously entails attempting to contact individuals in various ways including phone calls in an attempt to collect debts. It is not a business that has a right to illegally intrude on the privacy, rights and serenity of the lives of those who do not owe them a debt or have no debt at all. MCM is not in a business that has free rein to illegally abuse

---

[14] *See Mack v. Midland Credit Management, Inc.* 4:14-cv-00200; *Mack v. Midland Credit Management, Inc.*, 4:14-cv-00265 Eastern District of Texas; *Mack v. Midland Credit Management, Inc.*,4:14-cv-00414 Eastern District of Texas; *Mack v. Midland Credit Management, Inc.*, 4:14-cv-00481 Eastern District of Texas; *Mack v. Midland Credit Management, Inc.,* 4:14-cv-00578; *Mack v. Midland Credit Management, Inc.*, 32-SC-14-00275 Justice Court 3-2, Collin County, Texas.

whoever it may come in contact with in *any* manner, including Mr. Mack, when attempting to accomplish the *fictional behemoth's* goal of collecting money to fill its coffers. It surely does not have a right to violate consumer protection laws and individual civil rights with impunity.

To be sure, MCM is an *inanimate fictional behemoth* with no concept of right or wrong or any sense of responsibility for its actions as any human might have. Its current actions, and those of years past, demonstrate its continued utter disregard of consumer protection statutes. Its longstanding policies and procedures of using the courts, lies, deceit, and trickery to defend its insidious and abusive illegal actions in dealing with both debtors and non-debtors is a matter of public record.[15] This Goliath obviously believes it is cost prohibitive to operate within the law in conducting its business and views any costs it incurs in litigation or settlements paid to harmed persons or government agencies, both state and federal, as simply the cost of doing business. MCM's *modes operandi* is confirmed when one scrutinizes public and court records and sees the incredible numbers of lawsuits brought against MCM and its parent for the **same kinds of violations** year after year after year.

The litigation trail involving MCM as a defendant is extensive and ugly, littered with MCM being found guilty of, or admitting to, numerous violations of consumer laws, blatant lies made by corporate representatives, massive civil penalties and judgments in the millions of dollars levied against it,[16] and it appears there is no end to that trail in sight given its ongoing and

---

[15] *Brim v. Midland Credit Management, Inc.* 795 F.Supp.2d 1255 (N.D. Ala. 2011) "In the facts before this Court, the degree of reprehensibility is great, as defendant has stood by a faulty system for years, insisting its procedures are reasonable, in the face of obvious evidence otherwise."

[16] *State of Texas* **v.** *Midland Funding. LLC, et al.* http://www.msfraud.org/law/lounge/State-of-Texas-v-Midland-Funding-Encore-robosigning-2011.pdf; *MARTHA VASALLE, et al., v MIDLAND FUNDING LLC*, et al, US Dist. Court, Northern District of Ohio, Western Division **Case No. 3:11-cv-00096** http://www.ftc.gov/policy/advocacy/amicus-briefs/2011/06/martha-vassalle-et-al-v-midland-funding-llc-et-al; *West Virginia v. Midland Funding LLC, Midland Credit Management Inc.*, 2011… http://wvrecord.com/news/242479-

current behavior. It is a reasonable assumption that a mere fraction of those consumers who have their rights violated actually do *anything* to make companies such as MCM accountable for their violations of the law so the incredible numbers of lawsuits are indicative of a substantially larger problem.

Goliath views David Mack as one of those consumer rights *infidels* who must be crushed like a bug, silenced, and prohibited from standing up for himself by exerting his rights in the courts. Mack has dared to move forward in the courts to hold Goliath accountable for its violations of his rights to privacy and serenity as well as its multiple violations of consumer protection statutes resulting from 110 illegal, unwarranted, and disruptive calls to his cell phone. Mack is unlike the majority of people in America today who tolerate being the victims of MCM's *war* against them and the abuse that MCM showers upon them daily in its insatiable quest for the dollar but to MCM he is nothing more than another worm in the chicken yard.

Not unlike an air wing of planes loaded with cluster bombs being dropped from the sky, MCM uses highly automated telecommunications systems located around the world[17] to unleash millions of calls to untold numbers of Americans every day.[18] Many of those calls are made to people like Mack who are **non-debtors** who wish to, and have the right to live their lives free of harassment and intrusion into their seclusion **not owing one thin dime to MCM**.

People harmed, like Mack, are viewed by Goliath as nothing more than "collateral damage" in its *war* against debtors and alleged debtors of this country to produce profits. People like Mack receive intrusive and harassing calls as non-debtors because of the massive and ill-

---

debt-buying-company-shocked-by-mcgraws-lawsuit; *Swanson v. Midland Funding LLC*, Minnesota
http://www.ag.state.mn.us/Consumer/PressRelease/121212DebtBuyers.asp
[17] Call centers located in San Diego, CA, Phoenix, AZ, St. Cloud, MN, Gurgaon, India and San Jose, Costa Rica Source: Encore Capital Group, Inc. 2012 10K filing
[18] "During 2012, we called approximately 13.2 million unique consumers" Source: 2012 Encore Capital Group, Inc. 10K filing.

conceived calling campaigns unleashed each and every day and wrought upon the people of this country by Goliath. MCM employs every conceivable and underhanded means necessary to escape liability for that collateral damage inflicted by it in its *war* on the American public when brought to account in the courts by innocent and harmed Americans like Mack.

Incredulously, this behemoth's position is that Mack should be prohibited from taking or continuing any further actions against it in this or any other court yet it utterly fails to be forthright with the court in doing so and, in fact, acts in a deceptive manner by not disclosing pertinent information to the Court. MCM asks for an order from this court dismissing this case and barring him from filing any others even though Mack is the innocent victim of collateral damage from Goliath's *war,* and merely seeks to be compensated for damages according to law. MCM accuses Mack of harassing him with lawsuits which he has every right to file as a result of Goliath's violation of his rights but its accusations are like the fire calling the kettle black when it made 110 harassing phone calls to Mack's cell phone for no apparent or *explained* reason.

Congress was very specific in that a consumer acting as a Private Attorney General could bring a court action against any person who violated their rights under the consumer protection statutes such as the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act which are at issue in this case and the other mentioned cases.

In this modern day David vs Goliath battle David Mack has brought just such actions and Goliath attempts through deceit and half-truths to avoid being held accountable for ALL of its violations relating to Mr. Mack. It unconscionably and improperly asks this court to issue an injunction based on *res judicata* prohibiting him from filing any actions against it in the courts[19] and to deny him justice to which he is entitled under the law while deliberately leaving out the most pertinent facts that show *res judicata* does NOT apply in this case or any other he has filed.

---

[19] Defendant's Motion for Judgment on the Pleadings Doc. 11 Pg. 17

## A. **Plaintiff's Claims Are Barred by the Doctrine of Res Judicata and Must Be Dismissed.**

MCM argues that Mack's claims are barred by the Doctrine of *res judicata* and must be dismissed. In doing so it cites *Cuauhtil v. Chase Home Fin., LLC.,* 308 F. App'x 772, 773 (5th Cir. 2009) citing *Bradley v. Armstrong Rubber Co*, 130 F.3d 168, 179 (5th Cir. 1997)); *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 715 (5th Cir. 1975 ("Federal law clearly governs the question whether a prior federal court judgment based on federal question jurisdiction is *res judicata* in a case also brought . . . under federal question jurisdiction."). MCM states that under federal law res judicata requires: (1) identical parties; (2) jurisdiction for the prior judgment; (3) a final judgment on the merits; (4) the same cause of action. MCM argues that each element of the doctrine of *res judicata* is satisfied and Mack's claims should be barred when in fact that assertion is factually false as explained below.

### 1.   **Identical Parties.**

Mack agrees that parties in this case are identical to the prior lawsuit. Mack filed suit against MCM in the prior suit as stated.

### 2.   **Jurisdiction for the Prior Judgment.**

The prior lawsuit was properly removed to the U.S. District Court for the Eastern District of Texas and therefore the court had jurisdiction to render a judgment in the prior lawsuit. Mack does not dispute this element. MCM does correctly argue that the claims made in the first lawsuit **could** have been originally filed in federal court but it is very clear that they are **not required** to be brought there and in fact the intent of Congress was for those cases brought under the TCPA to be able to be brought in state level courts also[20] which is precisely what Mack did.

---

[20] Mims v. Arrow Fin. Servs., LLC, --- U.S. ---, 132 S. Ct. 740, 747 (2012) "plaintiffs have a choice of forum rather than two separate avenues for recovery."

MCM argues "In the instant case, Plaintiff's Texas state law claim is related to the conduct that forms the basis for plaintiff's TCPA and FDCPA claims" (referring to the prior case) but it fails to state what conduct it refers to. How was the call made in the first lawsuit related to the call which is the subject of this lawsuit? MCM simply says the conduct of each call is related but fails to state any facts as to HOW the conduct in each situation was related. Factually they were not related. Each call was a **separate, distinct, and unique occurrence** unrelated to any other which will be shown by Mack below. MCM goes on to falsely argue "Thus, it is clear that Plaintiff's state law claim in this case is "so related to claims in the action within the [the court's] original jurisdiction" that they form part of the same case or controversy and, as such, fall squarely within this Court's supplemental jurisdiction as provided under 28 U.S.C. § 1367(a); see also 28 U.S.C. § 1441(c)......"

MCM also falsely argues "Moreover, Plaintiff's state law claim does not raise novel or complex issues of law, does not predominate over Plaintiff's demand for relief under the TCPA and FDCPA, and **arises from the same transaction or occurrence**" but fails to identify any facts about **any** alleged transaction or occurrence or provide any evidence of same. (Emphasis added) Smoke and mirrors abound. Notwithstanding the above arguments, Mack agrees that the U.S. District Court for the Eastern District of Texas did have jurisdiction to enter the judgment on Mack's TCPA and FDCPA claims in the first lawsuit. The court should take note that MCM alludes to alleged facts where there is no evidence supporting those facts in the record.

**3.  A Final Judgment on the Merits.**

Mack agrees and admits that his acceptance of the offer of judgment amounts to a prior judgment rendered on the merits and the <u>admission of all claims brought by Mack under the TCPA and FDCPA against MCM</u> in **that individual lawsuit**.

## 4. The Same Cause of Action.

The first sentence in MCM's argument of the same cause of action demonstrates very clearly why its argument fails as to the same cause of action between the two lawsuits. MCM argues "The instant federal court lawsuit and the prior lawsuit involved the same causes of action ....claims against Midland arose from the same nucleus of operative fact...." yet it has conveniently failed to identify anywhere in their motion what this "same cause of action" is or what the "same nucleus of operative facts" is. Clearly a smoke and mirrors argument with no substance, facts, or evidence presented. At no time has MCM ever stated why it called Mack's cell phone or given an explanation for doing so because it would solidify and corroborate Mack's claims against Goliath.

MCM is asking the court to assume facts not in evidence and is more than likely hoping the court will visualize an all too common scenario of it simply calling Mack multiple times in an attempt to collect a debt from him which would have resulted from a **transaction. T**hose actions could then form the core of a **common nucleus of operative facts** IF they were true. No facts have been presented in support of any such scenario, or *any* scenario for that matter, that would or could support its argument because none exist. The simple reason no evidence has been provided is because **Mack is a non-debtor, there was no transaction, there is no account to collect on, and Mack owes MCM nothing** so there was no reason for it to ever be calling his cell phone. MCM drones on with the same refrains of "same cause of action" and "same nucleus of operative facts" over and over in their motion when in fact they have failed to identify or provide one minute speck of evidence of either at any point in their motion.

### a. Plaintiff's FDCPA Claim Involves the Same Cause of Action.

By no stretch of the imagination does Mr. Mack's FDCPA claim in the instant case involve the same FDCPA cause of action as the first lawsuit or any other lawsuits he has filed against MCM. While MCM clearly states there is no case law in the Fifth Circuit discussing the application of *res judicata* principles to FDCPA claims based on separate phone calls, it reaches out to another jurisdiction and cites *Beeders v. Gulf Coast Collection Bureau,* 632 F. Supp. 2d 1125 (M.D. Fla. 2009) and *Cohen v. Am. Credit Bureau, Inc.*, No. 10-5112 (WJM), 2012 WL 84729, at *10 (D.N.J. Mar. 13, 2012) in support of its argument. *Beeders* is not the least bit analogous to the instant case. In *Beeders* the issue was 10 phone calls made to, and **messages** left for, a **debtor** by a debt collector. MCM states "In *Beeders v. Gulf Coast Collection Bureau*, the Plaintiff filed ten separate lawsuits each relating to one of ten **messages** left by the defendant over the course of several months, 632 F. Supp. 2e 1125." (Emphasis added) It is obvious that each **message** in the Beeder case was an attempt to collect the same debt from the Plaintiff which created a common nucleus of operative facts. MCM states "Between January 31, 2008 and April 16, 2008, Gulf Coast made ten automated telephone calls to Beeders regarding a debt he owed to gulf Coast. These telephone calls resulted in ten identical or nearly identical voicemail messages, the content of which is not a matter of factual dispute." *Beeders v. Gulf Coast Collection Bureau,* 632 F. Supp. 2d 1125 (M.D. Fla. 2009). No messages were ever left by MCM for any of the 110 calls placed to Mack's cell phone and no live person was ever on the phone when Mack answered it. Each call made to Mack's cell phone was a **separate, distinct, and unique occurrence** unrelated to any other as the purpose of the call(s), if there was one, has never been stated by MCM and is unknown.

Under its theory of related facts MCM would, as an example, have the court take the position that if a person ran into the front fender of the Magistrate Judge's car in the morning and the same person then ran into the rear quarter panel of the Magistrate Judge's car in the afternoon that there is a common nucleus of operative facts and the two accidents were related which is preposterous. Although the same parties were involved in each accident and there were similar activities (collision) they are **separate, distinct, and unique occurrences** unrelated to each other; exactly like each phone call to Mr. Mack where MCM failed to identify itself and the purpose of its call. There was NO debt at issue to possibly form a common nucleus of operative facts related to each phone call or lawsuit. In *Cohen* similar circumstances were apparent as stated in MCM's motion where the court said "that withholding already accrued violations and bringing separate lawsuits *seriatim* would also violate the entire controversy doctrine, "which is 'a preclusionary principle intended to avoid the fractionalization of litigation by requiring joinder in a single action of all claims between the same parties arising out of the same circumstances.'"

The FDCPA claims which are the subject of the instant action have absolutely no connection whatsoever with the FDCPA claims brought in the first lawsuit against MCM in which Judgment was entered against MCM and it admitted to all claims brought against it and there is no evidence before this court to the contrary. Mack states there is no common nucleus of operative facts that relates to the FDCPA claims made in both cases and there is no evidence before this court to the contrary. Defendant's argument that the Plaintiff's FDCPA claim involves the same cause of action as the prior suit fails and its motion should be denied.

**b. Plaintiff's TCPA Claim Involves the Same Cause of Action**

The argument made by MCM that the TCPA claims in the instant suit involve the same cause of action as the first lawsuit and should be barred by *res judicata* is just as baseless and

without merit as its arguments about the FDCPA claims. The claim made under the TCPA in the instant case is spelled out succinctly and with specificity as it was in the first lawsuit where MCM admitted liability for the TCPA claims made and had judgment rendered against it. MCM clearly understood that the violations alleged by Mack fell under the TCPA federal statute OR the corresponding Texas statute but not both and their offer of judgment reflected that. There was no argument then of Mack making claims under both federal and state law yet MCM makes that bogus argument in its motion which has no merit and should not be considered by the court.

MCM again cites *Beeders* but then digresses to discuss matters involving the FCCPA (a Florida debt collection statute) and attempts to mislead the court once again by construing a Florida statute argument as something TCPA related. MCM boldly states "Here, there is no question the TCPA claims asserted in the prior lawsuit arise from the same nucleus of operative facts as the claims asserted in the present case." No question?? Is this a case of MCM thinking that if you repeat something like "same nucleus of operative facts" enough times the Court will think it is true even though there is not one shred of evidence there IS any nucleus of operative facts before the court? MCM would have this court believe that when there are multiple violations of the law that they should all be lumped into one action no matter what the circumstances may be.

An example of MCM's thinking would be something similar to the following: Fictitious Joe Smith is stopped for speeding on Central Expressway on Monday morning at 10 AM and given a ticket for the violation. He is stopped again on Monday at 2 PM for speeding and given a ticket for that violation. He is stopped on Tuesday at noon for speeding once again and given a ticket for that violation. The same thing happens on each succeeding day and several times per day for the next 3 weeks. When Mr. Smith goes to court to answer for the very first violation for

speeding, admits liability, and pays his fine does that mean that all the rest of the times where he was ticketed for speeding and violated the law he can argue afterward that there is a common nucleus of operative facts and all of his tickets for violations should have been combined and the state should be prohibited from collecting any more of the fines for speeding? He should be able to walk away from all the successive fines for violations? If it was MCM instead of Mr. Smith that is likely how the argument would go. Would the court buy it or look at each and every one of those violations as **separate, distinct, and unique occurrences** (which they are) and make Mr. Smith Pay the fines? This case with the calls to Mr. Mack is no different no matter what baseless argument is made by Goliath to escape liability and fatten its coffers at the expense of Mr. Mack.

There are numerous unanswered questions here such as: Why were they calling Mr. Mack's cell phone? Did they have technical problems with their calling system? Have they provided any kind of plausible set of facts that explain why they were calling Mack's cell phone that supports their arguments? Were they trying to collect a debt from Mack? Do they argue they left messages which could possibly create a "common nucleus of operative fact"? The answer to each and every question is a thundering **NO!** They have not because there IS no set of facts, explanation, or excuse why they called Mack's cell phone 110 times but they want to get away with paying Mack damages for one single (the first) phone call and deprive him of damages for which he is entitled for the other 109 calls. They want the court to bar him from litigating and effectively sweep them under the rug. Who has abused or is attempting to abuse who here? Mack is subjected to an **incessant barrage** of 110 phone calls without explanation and MCM plays the victim and uses every dirty trick in the book to escape liability. The Court should not allow it to do so. There is no merit whatsoever to MCM's argument that *res judicata*

bars Mack from bringing this action for damages because MCM has provided nothing but empty rhetoric with no facts or evidence put before the court in support of its argument and there is no evidence to the contrary. MCM's Motion for Judgment on the Pleadings on TCPA issues is without merit and should be denied.

**B.      Plaintiff's Claims Are Barred by the Rule Against Claim-Splitting and Must Be Dismissed.**

Once again MCM argues that Mack's Amended Complaint must be dismissed for the additional reason that the rule against claim-splitting prevents Mack from maintaining two (or more) separate lawsuits against MCM arising from the same cause of action. Here again MCM presents a hollow and unsupported argument that fails in the face of the facts, or lack thereof. MCM cites among several cases *Ameritox, Ltd. Kv. Aegis Scis. Corp.*, No. 3:08-CV-1168-D, 2009 WL 304874, at *4 (N.D. Tex. Feb. 9, 2009) (citing *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. Appx'x 256, 265 (4th Cir. 2008)). Stating "In other words, 'the second suit will be barred if the claim involves the same parties and arises out of the same transaction or series of transactions as the first claim.'" Id. (citing *Sensormatic Sec. Corp.*, 273 F. App'x at 265; *FDIC v. Nelson*, No. 93-1590, 1994 WL 93409, at *2 n.5 (5th Cir. Mar. 15, 1994) (holding that Fifth Circuit applies the "same transaction" test, i.e., whether the earlier and later claims are "based on the same nucleus of operative fact" to determine whether a claim has been split)).

MCM has made yet another frivolous and unfounded argument because **it knew before filing its motion and wasting this court's time there IS no transaction** to be subject to a "test" and additionally drones on once again about the "same nucleus of operative fact" which has never been identified by MCM because it is nothing more than a fictional idea and argument and known to be so by MCM. What was this "transaction" that MCM keeps alluding to? When did it occur? What are the specific or general facts of the transaction if it does exist? Was it

between Mack and a party other than MCM, and if so, who?  So many unanswered questions arise from so many baseless and frivolous arguments one could trip over them and break a leg. MCM wastes more toner and paper and argues citing *Ameritox, Ltd.,* 2009 WL 305874, at *5 (collecting cases) and others to argue "The first suit need not reach final judgment before a motion to dismiss based on improper claim-splitting can be granted" which is not applicable here and frivolous because Judgment **has** been entered.

MCM also goes on to say "Further, Plaintiff's litigation strategy is no different from that in *Beeders* and *Cohen*.  By filing separate lawsuits based on a single call that Midland allegedly made to Plaintiff's cell phone, Plaintiff seeks to bring his claims piecemeal to avoid the $1,000 statutory cap on damages under the FDCPA."  Once again MCM's argument is unfounded and it knows it.  When Mack had the first communication with Mr. Manley as counsel for MCM he sent a rather detailed email stating his position and stated what he knew about MCM's litigation strategy and what strategy he was employing in response to that which was not in any manner to avoid any cap on damages.[21]  Mack was making every effort to settle the matter and not trying to avoid any cap on damages.  All of Mack's claims have been brought in good faith.

MCM again attempts to play the victim card by stating "Plaintiff's vexatious litigation strategy harasses Midland and causes it to incur unnecessary expenses by litigating each claim separately.  If MCM is so concerned about litigation costs why has it **refused to engage in *any* good faith settlement discussion** with Mack and spent extensive and UNNECESSARY funds removing cases filed in small claims court (to mitigate costs) to the District Court?  Another case of the fire calling the kettle black.  The only settlement activity that MCM has engaged in other than its original insulting offer of $1,000 is the Offer of Judgment on one single call with the intent on using it to manipulate this Court into barring the Plaintiff from any further recovery for

---

[21] *See* Exhibit C attached

his damages which are substantial under the statute after its ploy with the MDL failed to accomplish the goal of burying Mack in the black hole. Is this the Doctrine of Fair Play at work?

MCM also complains about the fact that Mack has filed over 30 lawsuits in 3 years[22] stating "Although Plaintiff is *pro se*, he is not permitted to bring meritless litigation." MCM is not the first to accuse Mack of vexatious litigation and whine about the number of lawsuits he has filed in the courts. In this same District the Court recently entered an order[23] stating "Defendant fails to come close to reaching the level to declare Plaintiff vexatious. Defendant points the Court to twenty cases filed by Plaintiff [Mack] in this district, but fails to explain which, if any, of these cases were dismissed as frivolous. The fact by itself, that Plaintiff files a large number of cases does not make him vexatious. **Plaintiff has a right to sue for violation of his rights**, and this Court has never found that Plaintiff abused the process in his prior litigation." (Emphasis added) Factually, Mack has NEVER had a case dismissed for being vexatious or abusing the courts. MCM's argument is unfounded and frivolous.

Mr. Mack has the utmost respect for this and all other courts and has studied extensively making every effort to follow the rules of the court and proper procedure and is very familiar with the Rule on claim-splitting and what constitutes *res judicata* in a case such as this. In the instant case it should be abundantly clear that Mack has no intent to circumvent or evade the statutory caps on damages by claim-splitting and is simply trying to make Goliath accountable for its actions. Mr. Mack is employing an above board strategy to do so which is more than can be said for Goliath. Why won't MCM engage in settlement discussions having already admitted to **all claims** on the first call of 110? Every call made came from the same number to the same number. If they admitted violations in the first call how can subsequent calls be any different?

---

[22] Mack v. Midland Credit Management, Inc., 4:14-cv-00481 Doc. 11 Pg.16 fn.5.
[23] *Mack v. Progressive Financial Services, Inc.* 4:13-cv-544 Doc. 28

Who is prolonging litigation and wasting court resources here?  MCM's Motion for Judgment on the Pleadings on Claim-Splitting is unfounded and without merit and should be denied.

**C.**    **The Court Should Enjoin Plaintiff from Filing Additional Lawsuits Against Midland Based on Phone Calls Made Before March 14, 2014.**

MCM unconscionably requests this Court grant an injunction to prevent Mack from filing any further lawsuits against it for completely unrelated violations of the same statutes coupled with its request to dismiss viable and legitimate claims already pending before the court because it doesn't want to pay damages to Mack, pure and simple.  Mack is not desirous of filing more actions in small claims court or any other against MCM unless it is warranted.  While Mack fully understands the inherent power of the Court to manage its docket as it sees fit he also knows that the Court has a duty to all litigants to see that justice is served, they are not prejudiced by decisions of the Court, and fair play by all parties is practiced.  Unfortunately fair play has not been the game of the day for MCM in this David vs Goliath battle.

As a response to MCM's request that the Court grant an injunction prohibiting any further litigation by Mack against MCM, Mack asks that the District Court exercise its inherent power and broad discretion to instead order MCM to mediation of the issues in these individual cases in an effort to achieve a settlement of the disputes in their entirety, yet preserve Mack's right to move forward in an appropriate manner before the District Court, if necessary, should no settlement be reached in good faith mediation.  Mr. Mack is very aware of the caseload the District Court is operating under which is just one of several reasons why he filed his claims in the small claims court so as not to burden the District Court while still being able to seek remedy for the violations of his rights knowing who he was up against in doing so.  Unfortunately it has been MCM who has chosen, for less than honorable reasons, to remove the cases to the District

Court unnecessarily increasing its workload and dramatically increasing its own costs of litigation.

It is true that theoretically corporations are governed by a board of directors and that the ordinary affairs of the corporation are carried on by its officers and employees but the corporation, although it is lifeless, chiefly runs itself. Charles A. Reich, professor at the Yale Law School said "the corporation is an immensely powerful machine, ordered, legalistic, rational, yet utterly out of human control, wholly and perfectly indifferent to any human value."

## VI. CONCLUSION

Because MCM has not shown there is any transaction that could have been the basis for or shown that there is any same nucleus of operative facts relating to the instant lawsuit and the prior lawsuit where *res judicata* applies as alleged in its Motion for Judgment on the Pleadings, and there is no evidence before the Court that Mack has violated the Rule against claim-splitting, this Court should deny MCM's Motion for Judgment on the Pleadings.

WHEREFORE, David Mack respectfully requests this Honorable Court enter an Order denying Defendant's Motion for Judgment on the Pleadings and Order Midland Credit Management, Inc. to engage in good faith mediation with Mr. Mack to attempt to resolve the issues between the parties and in its Order also provide a framework on how Mr. Mack should properly move forward in the District Court should mediation prove fruitless.

Respectfully Submitted,

David E. Mack
7720 McCallum Blvd. #2099
Dallas, Texas 75252
972-735-9642
mack2001@swbell.net

## CERTIFICATE OF SERVICE

This is to certify a true and correct copy of the foregoing document was sent to the below named party by first class USPS mail.

Dated: October 3, 2014

David E Mack

Reid S. Manley
BURR & FORMAN LLP
420 North 20th Street Suite 3400
Birmingham, Alabama 35203